**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CRAIG A. JACKSON,

                 Plaintiff,

     v.

SERGEANT WEST, et al.,

                 Defendants.
_____

No. 9:23-CV-0306
(LEK/PJE)

| **APPEARANCES:** | **OF COUNSEL**: |
|---|---|
| Craig A. Jackson<br>22-B-0406<br>Cayuga Correctional Facility<br>P.O. Box 1186<br>Moravia, New York 13118<br>Plaintiff <u>pro se</u> | |
| NYS Office of the Attorney General<br>State Capitol<br>Albany, New York 12224<br>Attorneys for defendants | ALEXANDRA L. GALUS, ESQ.<br>LAUREN R. ROSENBERG, ESQ. |

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

       Plaintiff pro se Craig A. Jackson ("plaintiff"), an inmate who was, at all relevant

times, in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

defendants Sergeant West and D. Fenlong ("defendants") violated his constitutional

rights under the Eighth Amendment.  <u>See</u> Dkt. No. 1 ("Compl.").  Presently before the

Court is defendants' motion for summary judgment brought pursuant to Rule 56 of the

Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Dkt. No. 26. Plaintiff did not oppose. For the following reasons, it is recommended that defendants' motion be granted.

## I. **Background**[1]

On a motion for summary judgment, the facts are related in the light most favorable to the nonmoving party. *See Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

On June 13, 2024, the Court served upon plaintiff forms titled, "Notice of Due Date to Respond to Motion for Summary Judgment" and "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion. Dkt. No. 27. These forms advise plaintiff of his deadline to respond to defendants' motion and advise him that if he "do[es] not submit a proper response to the defendants' statement of material facts, the Court may deem [plaintiff] to have admitted the defendants' factual statements." Dkt. No. 27 at 1-2; *see also* N.D.N.Y. L.R. 56.1(b). Plaintiff did not respond to defendants' Statement of Material Facts.

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994). Where a non-movant does not respond to the motion or

---

[1] Unless otherwise noted, the Court has provided plaintiff with copies of all unpublished cases cited herein.

fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's statement of material facts; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003). Therefore, the Court will, for purposes of this motion, deem as true all *properly-supported* facts stated in defendants' Statement of Material Facts. *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (accepting as true the material facts contained in unopposed statement of material facts); *see also Demuth v. Cutting*, No. 9:18-CV-789 (LEK/TWD), 2020 WL 957381, at *1 (N.D.N.Y. Feb. 3, 2020), *report and recommendation adopted*, No. 9:18-CV-0789 (LEK/TWD), 2020 WL 950229 (N.D.N.Y. Feb. 27, 2020) ("Plaintiff's failure to oppose Defendant's motion results in the admission of properly supported facts, however the Court must still ensure those facts show Defendant is entitled to judgment as a matter of law.").

## A. **Facts**

Defendants provide that plaintiff was housed at Gouverneur from April 11, 2022, to June 13, 2022. *See* Dkt. No. 26-2 at 2. Gouverneur had a fully-functioning inmate grievance program during plaintiff's period of incarceration. *See id.* (citing Dkt. No. 26-4 at ¶11). Plaintiff's claims are proper subjects for a grievance under 7 NYCRR § 701.1, *et seq*. *See* Dkt. No. 26-2 at 2.

Plaintiff filed four grievances, from April 12, 2022, through April 17, 2022, alleging that defendants West and Fenlong assaulted him on April 11, 2022. *See id.* (citing Dkt. No. 26-4 at ¶14). The four grievances were consolidated into Grievance No. GOV-0087022. *See id.* Due to the nature of the grievance, it was forwarded to the

Superintendent. *See id.* at 3. On May 5, 2022, the Superintendent issued a determination denying plaintiff's grievance. *See id.* at 3 (citing Dkt. No. 26-4 at ¶28). Defendants contend that plaintiff did not appeal the grievance denial to CORC. *See id.* (citing Dkt. No. 26-4 at ¶13).

## II. **Legal Standards**

Fed. R. Civ. P. 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, summary judgment cannot be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted."). The party seeking summary judgment bears the burden of informing a court of the basis for its motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "mere conclusory

allegations, speculation, or conjecture," *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" to support its claims, *Anderson*, 477 U.S. at 252.  At the same time, a court must resolve all ambiguities and draw all inferences in favor of the nonmoving party.  *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S 133, 150 (2000).  The Court "may not make any credibility determinations or weigh the evidence."  *Id.*  Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them."  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a plaintiff proceeds pro se, the court must grant him "special solicitude," construe his submissions "liberally," and read such submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted) (citing *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)).  This is because "a pro se litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if [ ] not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing *Triestman*, 470 F.3d at 475).

However, the Second Circuit has cautioned district courts that they "cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest." *Triestman*, 470 F.3d at 477 (citations omitted). Further, the "special solicitude" standard does not excuse "frivolous or vexatious filings by pro se litigants," nor does it "exempt a party from compliance with relevant rules of procedural and substantive law." *Id*.

### III. **Discussion**

### A. **Argument**

Defendants argue that this case must be dismissed because plaintiff did not exhaust his administrative remedies prior to commencing this action because he did not appeal the Superintendent's denial of his grievance to CORC. *See* Dkt. No. 26-1 at 5. Although plaintiff does not oppose this motion, in his deposition, he contended that he appealed the Superintendent's denial to CORC but did not receive a response. *See* Dkt. No. 26-5 at 92-93.

### B. **Analysis**

### 1. **Exhaustion Standards**

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. *See id.* at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated." *Adams v. Annucci*, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y.

2021); *see Jones v. Bock*, 549 U.S. 199, 218 (2007). "In accordance with the PLRA . . . [DOCCS] has made available a well-established inmate grievance program . . . [which] involves [ ] following [a] three-step procedure for the filing of grievances." *Smith v. Kelly*, 985 F. Supp. 2d 275, 280 (N.D.N.Y. 2013) (citing 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7).

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). Nonetheless, "the defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]" *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). A defendant satisfies this burden by "establishing . . . that a grievance process exists" and that the plaintiff failed to use the grievance procedure. *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (citing *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003), and *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999)).

"[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quotation marks and citations omitted). "[O]nce a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." *Coleman v. Nolan*, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)). Availability means "an inmate is required to exhaust those,

but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  *Id.*

There are "three kinds of circumstances in which an administrative remedy . . . is not capable of use to obtain relief."  *Ross*, 578 U.S. at 643.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id.*  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 644.

## 2. **Declarations & Plaintiff's Deposition Testimony**

Defendants submit a declaration from Laura Hutchins, the Incarcerated Grievance Program Supervisor at Gouverneur Correctional Facility.  *See* Dkt. No. 25-3. Ms. Hutchins declared that plaintiff successfully completed "shop facility orientation" on May 16, 2022, through May 22, 2022, during which time he was given a presentation on how to file and exhaust grievances.  *See* Dkt. No. 26-3 at 2, 9.   Ms. Hutchins located records of plaintiff having filed four grievances in April 2022, regarding a staff assault on April 11, 2022, and that these grievances were consolidated into Grievance No. GOV-0087-22.  *See id.* at 6.

Gouverneur's records further reveal that the Superintendent denied plaintiff's consolidated grievance on May 5, 2022. *See* Dkt. No. 26-3 at 6 (citing Dkt. No. 26-3 at 16). The denial form advised plaintiff that "[i]f you wish to appeal the above decision of the Superintendent, please sign below and return this copy to the IGRC at the facility where the grievance was filed. You have seven (7) calendar days from the receipt of this notice to file your appeal. Please provide a reason why you are appealing this decision to CORC." *Id.* Ms. Hutchins declared that Gouverneur's records further show that plaintiff never appealed the Superintendent's denial of his consolidated grievance. *See* Dkt. No. 26-3 at 9.

Defendants further submit a declaration from Rachael Seguin, Director of the Incarcerated Grievance Program for DOCCS. *See* Dkt. No. 26-4 at 1. Ms. Seguin declares that DOCCS Directive 4040 provides that DOCCS must "maintain grievance files for the current calendar year and the previous four calendar years," that DOCCS maintains such files, and that "she searched DOCCS records for any appeals received by CORC relating to plaintiff's instant allegation." Dkt. No. 26-4 at 4. The records revealed that plaintiff "has not appealed any grievances to CORC pertaining to allegations of Eighth Amendment violations against Defendants Fenlong and West, while Plaintiff was housed at Gouverneur C.F. in DOCCS custody under DIN: 22-B-0405." *Id.*

Defendants note that plaintiff testified at his deposition that he "'filed the appeal at Gouverneur in May, like two days after' he received the determination." Dkt. No. 26-1 at 9. Defendants contend that this assertion is incorrect because DOCCS and Gouverneur records show that plaintiff never appealed the Superintendent's denial.

*See id.*   Defendants anticipate a potential argument, based on statements plaintiff made in his deposition, of the existence of "some type of conspiracy on behalf of the facility to hide or destroy his paperwork," but contend that "such allegations are conclusory and are not sufficient to defeat a motion for summary judgment."  *Id.*  Thus, defendants argue that this matter must be dismissed for plaintiff's failure to exhaust his administrative remedies before commencing this action.

As plaintiff has not responded to the motion for summary judgment, the Court does not have before it any of plaintiff's positions regarding exhaustion.  Out of special solicitude to plaintiff and in an attempt to view the facts in the light most favorable to the nonmoving party, the undersigned has searched the record for potential arguments regarding exhaustion.  In his deposition, when asked if he "understand[s] what the grievance process is at . . . the DOCCS facility," plaintiff acknowledged that he attended an orientation about grievances and stated that he "somewhat" understood the process. Dkt. No. 26-5 at 79.  Plaintiff testified that his understanding of the grievance process is that he needs to "follow the necessary steps.  I have to follow these specific steps."  *Id.* He states, "what I can do is I can bring it to the officer's attention. . . .  If that don't work, maybe speak to a sergeant or something like that.  If that don't get nowhere, I write a grievance."  *Id.* at 79.   When plaintiff was asked how he knew to file a grievance, plaintiff stated, "This isn't my first time in jail.  I just – you know, I – I—and these grievances that I've written, these are the first grievances I ever written in my whole life. I just – I just knew that, you know what I mean, I had to report it."  *Id.* at 80.  When asked further how he knew how to file a grievance, plaintiff responded, "I mean, I had a bunkie in the box.  I just wrote out – it wasn't no specific thing.  I just – I just took a piece

of paper and just wrote down what happened and sent it – and sent it to grievance." *Id.*

at 81.  When the AAG asked how he knew where to send the grievance, plaintiff

testified,

> it's no specific place.  I was in the box.  It's no specific place you have to
> send a grievance.  You just slide it underneath your door.  They come and
> get the mail.  It is not like, no, I could go and put this in a grievance box.
> No, we're locked in already.  We're in a box.

*Id.*

The AAG inquired about the grievance orientation plaintiff attended, to which

plaintiff stated, "I am not sure about that, man.  I am not even going to even – I – I can't

answer it."  Dkt. No. 26-5 at 81-82.  Plaintiff testified that he filed "like five" grievances

with respect to the issues underlying this action.  *Id.* at 82.  When asked if he heard

back about his grievances, plaintiff testified, "I received a letter in the mail . . . facility

mail, stating me that -- it was stating that it would – they had shut it down.  They – they

– they shut down my grievance.  It wasn't accepted."  *Id.* at 83.  In response to the

AAG's question whether he heard back from the grievance office about his grievances,

plaintiff testified, "yes."  *Id.* at 83.  Plaintiff acknowledged the Superintendent's denial

and stated that he understood the denial to mean, "it wasn't going to be nothing that

was done about the incident and that it was going to be swept under the rug."  *Id.* at 84.

He further testified that he understood the Superintendent's denial to mean that "it

wasn't found valid.  It was – it was shut down.  It wasn't going through. . . . Basically, . . .

it's denied."  *Id.* at 92.

Plaintiff testified that he "filed the appeal at Gouverneur in May, like two days

after I got – right after I got that paper in the mail, right, I filed – I filed my appeal for it."

Dkt. No. 26-5 at 92.  He states he did not receive a response to his appeal of the

Superintendent's decision. *See id.* at 92-93. When asked if it was his "understanding that the appeal you filed was going to go to CORC," plaintiff testified that he "didn't know where it was going." *Id.* He testified affirmatively that he filled out the bottom portion of the Superintendent's denial form and sent it in. *See id.* at 93. When plaintiff did not hear back on his appeal of the Superintendent's denial, he did not file another grievance or follow up with any kind of request to the grievance office. *See id.* at 94. When asked why he did not follow up, plaintiff stated, "I was still in that facility right there. And a lot of the paperwork, a lot of stuff, it was all against me over there. You get what I'm saying. I really didn't have a – like I said, I put in five grievances. You showed me four. I'm missing a grievance. You get what I'm saying?" *Id.* at 94-95. Plaintiff contended that he was "refused medical over there. I did not feel safe over there. Any type of paperwork that I do have and that I was able to escape with out of that facility, like I'm blessed to have it. Like I – I – I didn't have no control." *Id.*

When questioned about how he filed the appeal of his grievance denial, plaintiff testified that he "had another fellow peer help me out in here because I'm – I'm really not law library savvy like that. So I actually paid somebody to help me put this whole thing together . . . [s]o I could get the help that I need because I – I – like I said, I've never been involved in this type of stuff before . . . . I don't know what I am doing . . . . I told my story to a couple guys . . . and they helped me to get this far. And I --  I'm struggling here, man." Dkt. No. 26-5 at 96.

Plaintiff testified that, to file his appeal of the Superintendent's denial, he went to the law library with another inmate who "basically did everything. I signed it and – and we sent it out." Dkt. No. 26-5 at 97. Plaintiff testified that he sent his appeal to "Albany

– it went to this same address that I get all this mail from.  It went to office of the attorney – it went to you." *Id.*  When asked to clarify if plaintiff was stating that he sent his appeal of the Superintendent's decision to the Attorney General's Office, plaintiff stated, "It went to the – all that – that's all in the same building in Albany, right?  The Attorney General's office and everything is in Albany, two twenty – I believe it's two twenty." *Id.* at 97.  When confronted with the fact that the Superintendent's denial of his grievance contained instructions stating that any appeal of the Superintendent's decision is to be sent to the Inmate Grievance Resolution Committee ("IGRC") at the facility where the grievance is filed, but that he testified he sent it to the Attorney General's Office, plaintiff stated that he was "not even sure" where he sent it.  Dkt. No. 26-5 at 97.  He stated that he is "pretty sure I sent it to the grievance.  I am not sure where it went, man.  I know I sent it out.  I did every little piece of paperwork I was supposed to do." *Id.* at 98-99.  When asked whether he was "fearful that your grievance somehow wouldn't be listened to at that facility, plaintiff replied "Grievance? I was – was more fearful for my life." *Id.* at 99.

Plaintiff testified that when he was transferred out of Gouverneur to Cayuga, he did not follow up with the grievance office at Cayuga or attempt to pursue his grievance further.  *See* Dkt. No. 26-5 at 95.  Plaintiff testified that he "didn't know I had to" as he already filed five grievances at Gouverneur and "they shut it down." *Id.* at 95.  "I put the appeal in.  I didn't hear nothing about the appeal." *Id.*  He says when he was transferred to Cayuga, he also did not hear anything about his appeal.  *See id.*  Plaintiff then testified that he did not attempt to seek the status of his grievance once he was transferred to Cayuga because he "was happy to get out of that facility . . . . it's a whole

different environment in the facility I am in now than Gouverneur.  You could – you could feel the fear over there."  *Id.* at 100.  Plaintiff testified that once he was transferred to Cayuga, "I could start fresh and then go about my business, do my time, and get home.  I wasn't really like – I didn't want the whole state against me, man.  I didn't want to leave one jail and then go to another jail and I got the police all over me there neither.  So I wanted to like kind of fly under the radar."  *Id.* at 101.

Plaintiff states that upon transfer to Cayuga, he did not complete another orientation about the grievance procedure.  *See* Dkt. No. 26-5 at 102.  As he had completed a full orientation at Gouverneur, "the grievance thing was not discussed" at Cayuga; he underwent a more streamlined orientation.  *Id.*  When asked whether the original orientation at Gouverneur covered grievances, plaintiff then testified, "I'm not sure about all that, man.  I – that's not something that I am paying attention to, man.  I came to jail to do my time, man.  Not write grievances, man.  You get what I'm saying?  That's – that's – that's just what it boils down to."  *Id.* at 102.   When asked to clarify whether he was testifying that he never attended an orientation that went over the grievance process, plaintiff again stated, "I'm not sure, man.  I – maybe don't be paying attention to a lot of shit.  If it – if it don't – if it don't affect me or something like that, I'm just not paying attention to everything.  I have a short attention span on certain things."  *Id.*

Plaintiff testified that once he was transferred to Cayuga, he was in general population, but when asked whether plaintiff could have "stopped by the grievance office at any point in time," he testified, "I mean, yeah.  Yes, I guess.  I'm not even sure if we even have a grievance building here at all."  Dkt. No. 26-5 at 105.  Plaintiff further

testified that while at Cayuga, he was not "intimidated all," "assaulted at all," or "in fear for [his] life at all," by Cayuga staff. *Id.*

### 3. **Exhaustion of Administrative Remedies**

Here, the record is clear that plaintiff did not exhaust his administrative remedies before commencing this action. Although plaintiff testified that he appealed the Superintendent's denial of his grievance with help from a fellow inmate, he testified that was unsure if he sent the appeal to the IGRC or to the Attorney General's Office or another agency in Albany. The Court has before it no proof of his alleged appeal.

Plaintiff's testimony on exhaustion is littered with contradictions and lacks support. Plaintiff testified that he never received a response to his appeal, but did not follow up while he was at Gouverneur or Cayuga. Plaintiff's testimony was conflicting as to why plaintiff did not follow up. He indicated that he did not fully understand the grievance procedure, stating that he was not fully sure whether he was given a presentation about the grievance process at Gouverneur's orientation because he stopped paying attention based on his belief that it was not applicable to him or due to his short attention span. *See* Dkt. No. 26-5 at 102. Elsewhere in his deposition plaintiff suggests he was in fear for his life while at Gouverneur, but when asked if he feared filing an appeal to CORC, he indicated he had a *general* fear for his life at Gouverneur rather than a specific fear of proceeding with the grievance procedure. *See* Dkt. No. 26-5 at 99. Yet, plaintiff conceded that he did file four to five grievances while at Gouverneur. Plaintiff testified that he did not follow up on the grievance or pursue anything further when transferred to Cayuga because he did not know he was supposed to. *See id.* at 101. However, he also testified that he did not follow up on his grievance

once at Cayuga because he was trying to fly under the radar, complete his time in custody, and go home. *See* Dkt. No. 26-5 at 100-101.

In support of their motion for summary judgment, defendants provide the declarations of Ms. Hutchins and Ms. Seguin, who both declared that they checked records at both Gouverneur and DOCCS and there is no record of his appeal. *See* Dkt. Nos. 26-3, 26-4. Plaintiff does not counter defendants' proof with supported arguments or evidence; he does not provide to the Court a copy of his appeal or any clarity on where he alleges to have sent the appeal. *See* Dkt. No. 26-5 at 12; *See Gibbs v. Gadway*, No. 9:19-CV-281 (GTS/DJS), 2019 WL 5191506, at *3 (N.D.N.Y. Oct. 15, 2019), *report and recommendation adopted*, No. 9:19-CV-0281 (GTS/DJS), 2020 WL 1227156 (N.D.N.Y. Mar. 13, 2020) ("Plaintiff makes a purely conclusory allegation that he appealed the grievance denial to CORC. Significantly, plaintiff has not provided a copy of the grievance appeal or even asserted on what date he filed the appeal. In light of the documented proof that no such appeal was filed, such a conclusory statement is insufficient to create a material question of fact on this Motion."); *see also Blake v. Porlier*, No. 9:18-CV-1008 (DNH/CFH), 2019 WL 7484052, at *6 (N.D.N.Y. Oct. 4, 2019), *report-recommendation adopted*, No. 9:18-CV-1008 (DNH/CFH), 2020 WL 58613 (N.D.N.Y. Jan. 6, 2020) ("Even considering that plaintiff swore under penalty of perjury that he mailed a grievance within the allotted time frame, he did not provide any evidence to substantiate his allegations. [ ] Therefore, plaintiff's unsupported allegations cannot give rise to an issue of material fact sufficient to defeat a motion for summary judgement.) (citations omitted)). "In short, '[g]iven the lack of evidence that Plaintiff's appeal to CORC was ever filed, or ever followed up on, it is not that the full scope of

administrative remedies was not available to Plaintiff – rather, Plaintiff failed to fully

exhaust the administrative remedies available to him.'" *Shabazz v. Bailey*, No. 9:20-CV-

00057 (LEK/TWD), 2023 WL 5779533, at *7 (N.D.N.Y. June 28, 2023), *report and*

*recommendation adopted*, No. 9:20-CV-57 (LEK/TWD), 2023 WL 5622049 (N.D.N.Y.

Aug. 31, 2023), *aff'd*, No. 23-7252, 2025 WL 272602 (2d Cir. Jan. 23, 2025)  (quoting

*Houston v. Coveny*, No. 14-CV-6609, 2020 WL 2494439, at *3 (W.D.N.Y. May 14,

2020) and citing *Litchmore v. Williams*, No. 11-CV-7546, 2013 WL 3975956, at *6

(S.D.N.Y. Aug. 5, 2013) ("no 'sufficient basis in the record to find that administrative

remedies were unavailable' where, among other things, there was 'no evidence here

that the plaintiff's appeal was actually mailed, intercepted, or ignored' and 'DOCCS has

no record of any appeal filed with CORC'")).  "If a prisoner has failed to properly follow

each of the applicable steps before commencing litigation, he has failed to exhaust his

administrative remedies."  *Scott v. Uhler*, No. 9:16-CV-403 (TJM/CFH), 2019 WL

5197139, at *5 (N.D.N.Y. July 31, 2019), *report and recommendation adopted*, 2019 WL

4667495 (N.D.N.Y. Sept. 25, 2019).  Accordingly, the undersigned concludes that

plaintiff has failed to exhaust his administrative remedies in that he has not raised a

material question of fact as to whether he appealed the Superintendent's denial of his

grievance to CORC.  Thus, the undersigned must next assess whether administrative

remedies were available to plaintiff.

### 4.  Availability of Administrative Remedies

New York law establishes a three-step grievance and appeal process for prisoners. *See* N.Y. Comp. Codes R. & Regs. tit. 7 ("7 N.Y.C.R.R."), § 701.5. That process consists of the following: (1) "[a]n inmate must submit a complaint" with the Inmate Grievance Resolution Committee, *id.* § 701.5(a)-(b); (2) if the inmate disagrees with the response to the grievance, the inmate must "appeal to the superintendent," *id.* § 701.5(c);

and (3) if the inmate disagrees with the superintendent's findings, he must "appeal to the CORC . . . within seven calendar days after receipt of the superintendent's written response to the grievance," *id.* § 701.5(d). "A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." Toussaint, 660 F. Supp. 2d at 523 (cleaned up). The statute also states, "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC." 7 N.Y.C.R.R. § 701.5(d)(3).

*Foskey v. Paige*, No. 9:20-CV-504 (LEK/TWD), 2024 WL 2109150, at *3 (N.D.N.Y. May 10, 2024).[2]

Applying special solicitude, it is arguable that plaintiff is contending that administrative remedies were unavailable on several grounds, some of them conflicting. The Supreme Court of the United States has identified three circumstances in which a court may find administrative remedies are not "available" for PLRA purposes:

First, . . . an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can navigate it . . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

---

[2] As in this case,

There are . . . special procedures that may be used when the grievance involves a claim of staff misconduct. *Id.* § 701.8. A grievance alleging staff misconduct, once it is recorded and given a number, must be sent directly to the Superintendent, and the Superintendent must issue a decision within twenty-five days. *Id.* § 701.8(f). If the grievant wishes to appeal a decision by the Superintendent to CORC, he must file a notice of decision to appeal with the inmate grievance clerk at the bottom of the Superintendent's decision within seven days of receipt of the decision. *Id.* § 701.8(h). CORC is required to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.8(i) (incorporating § 701.5).

*Ayers v. Trombley*, No. 9:17-CV-01229 (DNH/TWD), 2019 WL 3892864, at *10 (N.D.N.Y. July 8, 2019), *report and recommendation adopted*, No. 9:17-CV-1229 (DNH/TWD), 2019 WL 3891027 (N.D.N.Y. Aug. 19, 2019).

*Ross*, 578 U.S. at 643-44.  The Second Circuit has interpreted these three circumstances as nonexhaustive as *Ross* focused on the "three kinds of circumstances that were 'relevant' to the facts of that case." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 n.2 (2d Cir. 2016) (citing *Ross*, 578 U.S. at 643).

## 1. **Was the Grievance Process Opaque?**

### a.  **Did Not Know How to Grieve**

First, plaintiff's deposition testimony suggests that he did not fully exhaust because was not sure how to complete the grievance process.  He testified that he had been incarcerated in state facilities before his incarceration at Gouverneur in 2022 but never had filed a grievance before the ones he submitted in this action.  Plaintiff admits that he attended Gouverneur's "shop facility orientation," but states that he was unaware if he was taught how to exhaust administrative remedies because he did not pay attention.  *See* Dkt. No. 26-5 at 102

The undersigned observes that the underlying incidents are alleged to have occurred on April 11, 2022.  Plaintiff filed his four or five grievances in April 2022, which were consolidated.  The Superintendent denied plaintiff's consolidated grievance on May 5, 2022.  Plaintiff attended "shop facility orientation" from May 16, 2022, to May 22, 2022.  *See* Dkt. No. 26-3 at 9.  Plaintiff alleges to have appealed[3] to CORC within two days of receiving his denial, meaning this all occurred before he competed his facility orientation training regarding how to file and exhaust grievances on May 16-22, 2022. *See* Dkt. No. 25-3 at 16; Dkt. No. 26-3 at 9.

---

[3]  As concluded, *supra*, the undersigned has found that plaintiff failed to demonstrate that he appealed the Superintendent's denial to CORC.

The undersigned assesses whether plaintiff's statement that he did not know how to grieve is sufficient to raise a valid argument as to opaqueness. The Second Circuit recently explained the "opaqueness" exception to the PLRA's exhaustion requirement applies where "[t]he regulations simply do not contemplate the situation in which [the prisoner] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016).

Liberally read, plaintiff's deposition testimony suggests that he did not understand the grievance procedure at any stage. However, even accepting as true that plaintiff did not fully understand what steps needed to be taken to exhaust his administrative remedies, plaintiff does not demonstrate that his ignorance of the grievance process rendered administrative remedies "opaque" as that term is contemplated by precedent.

To the extent plaintiff appears to have testified that he did not know how to proceed with the grievance process, plaintiff conceded that he: was aware that a grievance process existed; knew he had to "follow the necessary steps. I have to follow these specific steps"; knew that if informal methods of resolution were unsuccessful, he should file a grievance; asked his "bunkie" to help him file grievances; filed at least four grievances with respect to the underlying incident; and hired a fellow inmate to assist him. Dkt. No. 26-5 at 79. "[S]ince Plaintiff was able to discern and navigate the first two steps of the grievance process, there is nothing to suggest that the third step, the appeal to CORC, was opaque to such a point that it became incapable of use."

*Beauvoir v. Smith*, No. 9:14-CV-1495 (MAD/DEP), 2017 WL 4271636, at *3 (N.D.N.Y. Sept. 26, 2017).

Defendants submit records from Gouverneur demonstrating that plaintiff successfully completed shop facility orientation which included training on how to file a grievance and exhaust administrative remedies. When asked about such training, plaintiff gave vague and dismissive answers, suggesting he was unsure if he learned about how to proceed with a grievance and the various steps required because he did not pay attention, believing that it was not relevant to him and/or because he did not have a sufficient attention span to focus. Plaintiff testified that he did not know how to grieve and properly exhaust his grievance does demonstrate that administrative remedies were unavailable to him. Plaintiff concedes that he attended the orientation, but that he was unsure if he was taught how to proceed through the grievance process because he did not pay attention as he felt the information was not relevant to him or he zoned out due to attention span issues.

Similarly, when confronted at his deposition with the fact that the Superintendent's denial of his grievance included instructions that advised him that if he wished to appeal the denial, he was to sign and return the appeal section to the IGRC, plaintiff did not deny that the form contained such instruction, but responded that he was "not even sure" where he sent the appeal and was "pretty sure I sent it to the grievance. I am not sure where it went, man. I know I sent it out. I did every little piece of paperwork I was supposed to do." Dkt. No. 26-5 at 97-99. Plaintiff's choosing not to pay attention to the training needed to learn how to exhaust or declining to seek assistance does not demonstrate that the grievance process was "essentially

unknowable." *Hill v. Tisch*, No. 02-CV-390, 2016 WL 6991171, at *7 (E.D.N.Y. Nov. 29, 2016) (finding that the plaintiff failed to demonstrate that the grievance "procedures were essentially unknowable"). It demonstrates that plaintiff actively chose against educating himself or allowing his facility to educate him as to the grievance procedure.

The undersigned recognizes that plaintiff's orientation took place after he filed his grievances and received the Superintendent's denial. Thus, although he may have been untrained regarding the grievance process at the time he filed his grievances and received the Superintendent's denial, he attended such training by May 22, 2022, at the latest. Upon completing the orientation, he could have reached out to the IGRC or CORC and requested an extension[4] of time to appeal to CORC, citing mitigating circumstances, but failed to do so. *See* 7 NYCRR § 701.6(g);[5] *see generally Valverde v. Folks*, No. 1:19-CV-08080-MKV, 2022 WL 836310, at *7 (S.D.N.Y. Mar. 21, 2022) ("As such, it is possible that if Plaintiff had sought an extension to file an appeal from CORC, he could have received one. Plaintiff never did so."), *aff'd*, No. 22-848-PR, 2023 WL 2439876 (2d Cir. Mar. 10, 2023). Plaintiff's failure to avail himself of the grievance

---

[4] The regulations provide that an individual who wishes to appeal a Superintendent's denial in the expedited procedure has seven calendar days after receipt of the denial to do so. *See* 7 N.Y.C.R.R. 701.6(h)(2). The Superintendent's denial of his grievance is dated May 5, 2022. It is unclear when he received the Superintendent's denial, but the undersigned recognizes that his training likely came after the seven-day period had expired. However, plaintiff demonstrates that his absence of formal training at Gouverneur did not stop him from successfully navigating the grievance procedure at the earlier stages.

[5] A request for an extension of time to file an appeal to CORC may be requested in writing, but "an exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(1)(i)(a), (b). An inmate may choose to file a separate grievance if a request for an extension is denied. *See id.* § 701.6(1)(i)(b). Plaintiff completed the shop facility orientation on May 22, 2022, within forty-five days after the alleged occurrence on April 11, 2022. Thus, even if he was untrained on how proceed with the grievance process after receiving the Superintendent's denial until after he completed training, he still had time to request an extension to do so after receiving training. In such training, he would have likely also been advised to write to CORC or the IGRC if he did not receive confirmation of receipt of an appeal.

procedure is based on his ignorance of the training and failure to seek out resources rather than the opacity of the procedure.

"Courts within the Second Circuit are split regarding whether a failure to respond by CORC constitutes unavailability excusing a plaintiff's failure to exhaust." *High v. Switz*, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3736794, at *4 (N.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom. High v. PA Switz*, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018).  Indeed, the regulations "'do not describe a mechanism' for appealing or advancing a grievance when a grievant does not receive a response from CORC." *Id.* at *5 (quoting *Williams*, 829 F.3d at 124).

Plaintiff's case differs from those in which courts held administrative remedies were unavailable where a plaintiff appealed to CORC, but CORC never responded or failed to respond within a reasonable period of time.  *See, e.g.*, *High*, 2018 WL 3736794, at *4 (excluding the plaintiff's failure to exhaust where the plaintiff appealed to CORC but never received a response, finding administrative remedies were unavailable when CORC failed to respond).   Unlike in those cases,[6] where the Court found that administrative remedies were unavailable because the regulations did not explain what an inmate should do if he appealed to CORC but receives no response, in those cases there did not appear to be a question whether the plaintiffs actually appealed to CORC. Here, plaintiff presents no details nor any proof of his alleged appeal to CORC beyond

---

[6]  Further, in some cases addressing unavailability when an appeal to CORC is unanswered, the court found administrative remedies unavailable where the inmate plaintiff was transferred before receiving a response; here, however, plaintiff received the Superintendent's denial before being transferred and remained at Gouverneur for over a month after receipt of the denial.  *See, e.g., Robinson v. Ballard*, 9:13-CV-01213 (TJM/TWD), 2017 WL 979047, at *12 (N.D.N.Y. Feb. 3, 2017), *report and recommendation adopted*, 2017 WL 979039 (N.D.N.Y. Mar. 13, 2017) (citing *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016)) ("as in *Williams*, Plaintiff in this case was transferred to a new facility before receiving a response to his grievance and failed to receive a response after the transfer."); *See* Dkt. No. 26-2 at 2.

his conclusory claim during his deposition.  He testified that he appealed the Superintendent's denial, but offered conflicting testimony over where the appeal was sent – either to the Attorney General's Office or another agency "in Albany" or to the IGRC, did not provide a copy of the appeal, and did not indicate that he ever attempted to follow up with CORC or the IGRC after failing to receive any response from his appeal.  *See Valverde v. Folks*, No. 1:19-CV-08080 (MKV), 2022 WL 836310, at *8 (S.D.N.Y. Mar. 21, 2022), *aff'd*, No. 22-848-PR, 2023 WL 2439876 (2d Cir. Mar. 10, 2023) ("Here, unlike *Williams* [*v. Priatno*], Plaintiff concedes that his initial grievance was processed and answered. [] . . . . Plaintiff had an avenue to appeal the denial of his grievance, however he filed the appeal form improperly and it does not appear that he made any attempt to ever ask the grievance supervisor for confirmation that his appeal was received.").

Plaintiff proffered no argument or evidence that he "received written notice that the appeal was filed or that he attempted to contact CORC of the IGRC . . . regarding the status of his appeal before commencing this action."  *Bowie v. Woodruff*, No. 9:1-8CV-0266 (BKS/ML), 2019 WL 7606078, at *6 (N.D.N.Y. Sept. 20, 2019), *report and recommendation adopted*, No. 9:18-CV-00266 (BKS/ML), 2019 WL 5445519 (N.D.N.Y. Oct. 23, 2019) (citing *Fox v. Lee*, 9:15-CV-0390 (TJM/CFH), 2018 WL 8576600, at *7 ("granting summary judgment because the plaintiff did not proffer evidence that he wrote to the IGRC or CORC inquiring as to the status of his appeals" and "'never contacted Eastern's [IGP supervisor] in writing . . . to confirm that any of his appeals were filed and transmitted to CORC.'") *vacated in part on other grounds* 2023 WL 7481423 (2d. Cir. Nov. 13, 2023); *see* § 701.5(d)(3)(i) (noting that the IGRC dates all

CORC appeals and will forward the inmate a copy of the receipt, and that "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."  Indeed, "[t]he record is devoid of any indication that Plaintiff followed up with the [facility] IGP supervisor 'to confirm that the appeal was filed and transmitted to CORC' when he did not receive written confirmation within forty-five days that his appeal was received."  *Shabazz*, 2023 WL 5779533, at *7 (quoting 7 N.Y.C.R.R. § 701.5(d)(3)(i) and citing *Simpson v. Price*, No. 9:19-CV-1413 (MAD/ATB), 2021 WL 7367083, at *9 (N.D.N.Y. Dec. 29, 2021) ("granting summary judgment on exhaustion grounds where plaintiff 'provided no specifics regarding when the grievances were written, their content, or the steps he took to provide them to an officer to send to the grievance office' and there was no documentary evidence to corroborate the fact plaintiff attempted to file a grievance, such as follow-up correspondences."); *see Gizewski v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 9:14-CV-124, 2016 WL 3661434, at *13 (N.D.N.Y July 5, 2016) (concluding that the plaintiff did not exhaust his administrative remedies because he failed to take further action under § 701.5(d)(3)(i) when he did not receive written notice of receipt by the CORC within 45 days of filing his appeal; he did not contact the Inmate Grievance Program to ascertain whether CORC received his appeal), *aff'd*, 692 F. App'x 668 (2d Cir. 2017)).

By contrast, defendants produce records from both Gouverneur and DOCCS, along with declarations from the officials who maintain such records, showing that they have no record of plaintiff having ever filed an appeal of the Superintendent's denial of his grievance.  *See* Dkt. Nos. 26-3, 26-4 at 7-8.  Accordingly, plaintiff has failed to

demonstrate that his lack of understanding of grievance process amounts to the grievance process being so opaque to be rendered incapable of use.

### b. **Transfer**

Further, plaintiff's transfer from Gouverneur to Cayuga "does not excuse his failure to exhaust, as the grievance process is identical in all New York state-run facilities." *Campbell v. Prue*, No. 9:16-CV-0004 (MAD/CFH), 2018 WL 4635708, at *5 (N.D.N.Y. July 3, 2018), *report and recommendation adopted*, No. 9:16-CV-0004 (MAD/CFH), 2018 WL 3574871 (N.D.N.Y. July 25, 2018) (citing *Hartry v. Cnty. of Suffolk*, 755 F.Supp. 2d 422, 434 (E.D.N.Y. 2010) ("[S]ome courts [ ] have found that transfer within correctional facilities governed by the same governmental agency will not excuse exhaustion, regardless of whether the inmate had an opportunity to pursue the remedy while at the facility where the claim arose.") (additional citations omitted).

Plaintiff testified at his deposition that he did not attempt to follow up on his grievance after being transferred to Cayuga.  Plaintiff offered conflicting testimony for his reasoning behind declining to follow up once he reached Cayuga.  First, plaintiff testified that he did not follow up at Cayuga regarding his grievance because he did not know he was supposed to follow up there.  However, he later testified that he decided not to pursue his grievance once at Cayuga because he wanted to be able to serve out his time at Cayuga without being "noticed."  Dkt. No. 26-5 at 101.  Second, plaintiff made clear that he was not in any fear while incarcerated at Cayuga.  Thus, he was not prevented from pursuing his grievance at Cayuga.  Further, as noted, plaintiff received the Superintendent's denial of his grievance on May 5, 2022, and remained at Gouverneur until June 13, 2022, giving him sufficient time to pursue an appeal at

Gouverneur before his transfer. *See* Dkt. No. 26-2 at 2.  Plaintiff's conclusory and

conflicting statements that he did not know how to use the grievance procedure fails to

demonstrate that, as a result of his transfer to Cayuga, administrative remedies were so

opaque they were rendered incapable of use.

## 2. **Grievance Process as a Dead End**

Plaintiff testified that he did not know the next step he was supposed to take

when he did not receive a response from his alleged appeal to CORC.  Plaintiff further

testified that he filed a fifth grievance regarding "medical" while at Gouverneur but that

he did not receive a response.  Dkt. No. 26-5 at 94-95.  Applying a very liberal reading

of this testimony, plaintiff's statements could be interpreted as arguing that the

grievance procedure operated as a "dead end."  However, plaintiff's testimony on this

point fails to raise a material question of fact for the reasons discussed below.

Courts have rejected arguments that the grievance procedure was a "dead end"

where the plaintiffs chose to participate in the grievance procedure in some way, even

in unrelated matters, concluding that such participation demonstrates that the plaintiffs

did not view the grievance procedure as a dead end.  *See Luke Matthews*, et al.*, v. L.

Sweeny, Clinton Corr. Sergeant*, et al., No. 9:17-CV-0503 (GTS/ML), 2025 WL 447734,

at *7, *7 n.13 (N.D.N.Y. Feb. 10, 2025) (citing *Walker v. Ball*, 16-CV-0437, 2018 WL

1415212, at *5 (N.D.N.Y. Feb. 16, 2018) ("While Plaintiff did not file any grievances

regarding the alleged misconduct of Noonan and St. Johns . . . , he did file grievances

regarding other issues . . . . This shows that Plaintiff did not view the filing of grievances

as a dead end."), *report recommendation adopted*, 2018 WL 1406632 (N.D.N.Y. Mar.

20, 2018) (and others); *see Barrett v. Ballard*, No. 9:23-CV-113 (DNH/DJS), 2024 WL

4627511, at *4 (N.D.N.Y. Oct. 4, 2024), *report and recommendation adopted*, No. 9:23-CV-113, 2024 WL 4627801 (N.D.N.Y. Oct. 30, 2024) ("Plaintiff makes no argument that the grievance process was unavailable to him and cannot carry that burden especially since he claims that he did, in fact pursue, at least at the outset, to resolve this issue through the grievance process.").  Here, plaintiff filed at least four grievances regarding the issues underlying this complaint; thus, any argument suggesting that he believed the grievance procedure to be a dead end is without force.

To the extent plaintiff's testimony that he filed a fifth grievance that went "missing" could suggest that he believed the grievance process was a dead end, "Courts within the Second Circuit have continuously held that 'mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations.'"  *Blake v. Porlier*, No. 9:18-CV-1008 (DNH/CFH), 2019 WL 7484052, at *5 (N.D.N.Y. Oct. 4, 2019) (quoting *Rodriguez v. Cross*, No. 9:15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *5 (N.D.N.Y. May 9, 2017) *report and recommendation adopted*, 2017 WL 1076343 (N.D.N.Y. Mar. 22, 2019)).  Plaintiff offers no proof that he filed a fifth grievance relating to the matters underlying this suit or any support for his conclusory claim that the fifth grievance was filed and went missing.  *See Rodriguez*, 2017 WL 2791063, at *5 n.13 (finding that the plaintiff's failure to exhaust was not excused because, although the plaintiff "state[d] that some grievances were destroyed . . .  he ha[d] not submitted any copies of these grievances, nor d[id] he specify when he attempted to file them.").

In sum, the undersigned concludes that plaintiff has failed to demonstrate a material question of fact as to whether the grievance process amounted to a "dead end" such that administrative remedies were unavailable to him.

### 3. **Fear**

Plaintiff testified that he was in fear for his life while he was incarcerated at Gouverneur.  *See* Dkt. No. 26-5 at 99.  When asked for clarification as to whether he was afraid to file a grievance, plaintiff stated, "Grievance? I was – was more fearful for my life."  *Id.*  Plaintiff testified, however, that he was not in fear once he was transferred to Cayuga.  *See id.* at 100.  He testified that he did not pursue his grievance after not receiving a response to his alleged appeal because he did not know he was "supposed to" but also because he "didn't want the whole state against me, man.  I didn't want to leave one jail and then go to another jail and I got the police all over me there neither.  So I wanted to like kind of fly under the radar."  *Id.* at 101.

Administrative remedies may be unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

> However, a generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies. *Salmon v. Bellinger*, No. 9:14-CV-0827 (LEK/DJS), 2016 WL 4411338, at *5 (N.D.N.Y. July 5, 2016). Estoppel is found where "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers" occur showing that defendants acted affirmatively to prevent an inmate from availing him or herself of the grievance procedures. Id. at *5 (quoting *Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011)).

*Pridgen v. Beatie*, No. 9:16-CV-535 (DNH/CFH), 2018 WL 1402049, at *8 (N.D.N.Y. Jan. 17, 2018), *report and recommendation adopted*, No. 9:16-C-V535 (DNH/CFH), 2018 WL 1394146 (N.D.N.Y. Mar. 19, 2018).

Here, plaintiff's generalized, conclusory arguments about being in fear while at Gouverneur fail to state a viable unavailability argument under the "machination, misrepresentation, or intimidation" exception. *Ross*, 136 S. Ct. at 1860. Plaintiff does not assert that any specific individual at Gouverneur prevented him from filing an appeal by threatening or intimidating him. Plaintiff offers no argument or proof that defendants or other prison officials "affirmatively or misleadingly prevented Plaintiff from filing the appeal to CORC" or otherwise pursuing his administrative remedies." *Shabazz*, 2023 WL 5779533, at *7. Further, when asked if he were afraid of filing a grievance, his response suggested that he was fearful, generally, during his time at Gouverneur, and suggested that he was not specifically afraid of proceeding with his grievance. *See* Dkt. No. 26-5 at 99.

Significantly, the undisputed facts in this case belie any claims of fear. Plaintiff filed four – and argues he filed five – grievances at Gouverneur, defeating an argument that he was too afraid for his life to take advantage of his administrative remedies. *See, e.g., McNab v. Doe*, 686 F. App'x 49, 51 (2d Cir. 2019) (summary order) (affirming summary judgment dismissing the plaintiff's complaint for failure to exhaust where although the plaintiff asserted that the defendants tried to intimidate him because "none of the actions allegedly taken by the defendants actually prevented [him] from submitting his complaint letter."); *Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016) (summary order) (finding that the defendants' alleged threats of retaliation did not interfere with the plaintiff's exhaustion efforts because, following a threat, the plaintiff "thereafter submitted . . . [a] grievance in spite of this alleged threat"); *Hall v. Annucci*, No. 19-CV-5521 (KMK), 2022 WL 3903255, at *10 (S.D.N.Y. Aug. 30, 2022), *aff'd*, No.

22-2031, 2023 WL 7212156 (2d Cir. Nov. 2, 2023) ("[w]here an inmate files a grievance or appeals a grievance determination after having received threats or suffered retaliation, the inmate's conduct 'directly cuts against' . . . [an] argument that . . . administrative remedies were unavailable.") (citation omitted).

Accordingly, the undersigned concludes that plaintiff fails to demonstrate that administrative remedies were unavailable to him on the ground that "prison administrators thwart[ed] [him] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

## C. **Doe Defendants**

The undersigned observes that plaintiff has failed to identify or serve process on John Does 1-8, as required by Rule 4(m) and N.D.N.Y. Local Rule 4.1, despite having ample time and opportunity. Plaintiff commenced this action on March 8, 2023. *See* Compl. Discovery in this action expired in March 2024. *See* Dkt. No. 22. Plaintiff has had a substantial amount of time to identify and serve the Doe defendants, "and the Court is under no obligation to extend the deadline indefinitely." *Santiagocruz v. Doe #4*, No. 9:21-CV-0806 (TJM/ML), 2023 WL 9600956, at *1 n.1 (N.D.N.Y. Dec. 15, 2023), report and recommendation adopted sub nom. Santiagocruz v. Gordon, No. 9:21-CV-806, 2024 WL 532499 (N.D.N.Y. Feb. 8, 2024) (citation omitted); *see Waldo v. Goord*, 97-CV-1385, 1998 WL 713809, at *5 (N.D.N.Y. Oct. 1, 1998) (Kahn, J.) (dismissing claims against Doe defendants pursuant to Fed. R. Civ. P. Rule 4(m) where the pro se plaintiff failed to serve the Doe defendants within a year of commencing the action).

"All discovery is complete and thus, [P]laintiff's failure to identify the 'John Doe' defendant[s] mandates dismissal." *Epps v. City of Schenectady*, No. 10-CV-1101, 2013

WL 717915, at *5 (N.D.N.Y. Feb. 27, 2013).  Accordingly, the undersigned recommends sua sponte dismissal of defendants John Does 1-8 from this action without prejudice.

### D.  **Dismissal**

The Second Circuit has "recognized that failure to exhaust administrative remedies is usually a 'curable, procedural flaw' that can be fixed by exhausting those remedies and then reinstituting the suit." *Neal v. Goord*, 267 F.3d 116, 123 (2d Cir. 2001) (quoting *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999)), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). Thus, where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik*, 366 F.3d 85, 86-87 (2d Cir. 2004); *see Pettus v. McCoy*, 04-CV-0471, 2006 WL 2639369, at *1-2 (N.D.N.Y. Sept. 13, 2006) (dismissing a complaint without prejudice for failure to exhaust).  However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. *See Berry v. Kerik,* 366 F.3d 85, 86 (2d Cir. 2004); *see, e.g.*, *Hilbert v. Fischer*, 12-CV-3843, 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 5, 2013) (collecting cases).

Here, plaintiff received the Superintendent's denial on May 3, 2022, and he commenced this action March 8, 2023.  As plaintiff's time to exhaust his administrative remedies has expired, it is recommended that his complaint be dismissed with prejudice.

### IV. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that defendants' West and Fenlong's Motion for Summary Judgment, Dkt. No. 26, be **GRANTED in its entirety with prejudice**; and it is further

**RECOMMENDED**, that the claims against the Doe defendants be **DISMISSED without prejudice** based on plaintiff's failure to timely identify and serve those defendants; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).[7]

Dated: February 20, 2025
Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report- Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).